UNITED STATES of America

v.

**Theodore H. HEILIG.**

**Crim. No. 86–00048–01.**

United States District Court, M.D. Pennsylvania.

April 3, 1986.

David C. Shipman, Asst. U.S. Atty., Harrisburg, Pa., for the U.S.

Don Foster, Malcolm Lazin, Rubin, Quinn & Moss, Philadelphia, Pa., for Heilig.

## MEMORANDUM

RAMBO, District Judge.

### A. Background and Procedural History

Defendant Theodore H. Heilig was arrested on February 25, 1986 for distribution of and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On February 26, 1986, defendant was taken before United States Magistrate Andrew J. Smyser for a Rule 5 proceeding. At that hearing, the Government moved for a detention hearing pursuant to 18 U.S.C. § 3142(f). Although the Government was prepared to proceed with the hearing, defendant Heilig moved for a one day continuance to permit him time to confer with retained counsel. Because of the absence of Magistrate Smyser, the matter was transferred to Magistrate Durkin. The Clerk's Office issued a notice to counsel and defendant that the detention hearing would be held on March 4, 1986. Defendant neither filed a motion objecting to this date nor requested an earlier hearing.

The detention hearing was held on March 4, 1986. At that hearing, defense counsel

for the first time raised the issue of the timeliness of the hearing pursuant to 18 U.S.C. § 3142(f). Magistrate Durkin denied defendant's motion for release for failure to hold the detention hearing within the time required by § 3142(f). Following an evidentiary hearing, Magistrate Durkin also ordered that defendant be detained pending trial.

On March 10, 1986, defendant filed an Application to Amend or Revoke Detention Order. Defendant has filed a supporting brief and the Government has filed a brief in opposition to defendant's application. Defendant was arraigned before this court on March 18, 1986. A hearing on defendant's motion was held on March 27, 1986.

Defendant's Application to Amend or Revoke Detention Order will be denied. As required by 18 U.S.C. § 3142(i), this memorandum sets forth the court's findings of fact and statement of the reasons for the detention of defendant.

### B. *Timeliness of Detention Hearing*

The first issue that must be decided is whether the detention hearing before Magistrate Durkin was timely held. Defendant argues that 18 U.S.C. § 3142(f), which limits continuances on the motion of the defendant to five days except for good cause, was violated since the hearing was held six days after his initial appearance. As a result, defendant submits, this court may not order unconditional pretrial detention.

The determination whether the detention hearing was held within five days of defendant's initial appearance turns on whether weekends are to be included in computation of the five day period. If weekends are included, the hearing was held six days after defendant's initial appearance before Magistrate Smyser. If weekends are excluded from the computation, the hearing was held four days after defendant's initial appearance.

Defendant submits that weekends are to be included in the computation of time under Section 3142(f). Defendant relies upon the fact that in 18 U.S.C. § 3142(d), Congress expressly provided that weekends are not to be included in computation of the ten day period for temporary detention. He argues that if Congress had similarly intended to exclude weekends in computation of the five day continuance period, it would have expressly provided in Section 3142(f) that weekends were to be excluded. In *United States v. Hurtado*, 779 F.2d 1467, 1474 n. 8. (11th Cir.1985), the court in a footnote accepted the construction of Section 3142(f) preferred by defendant.

The Government argues that defendant misconstrues Congress' intent. It submits that Federal Rule of Criminal Procedure 45(a), which excludes weekends and legal holidays from statutory time period computations of less than seven days, applies to the computation of the five day continuance period of 18 U.S.C. § 3142(f). The Government also relies on Rule 45(a) to explain why Congress expressly excluded weekends in Section 3142(d) but did not do so in Section 3142(f). The Government contends that by stating weekends and holidays would be excluded in computing the temporary ten day detention period under Section 3142(d), Congress evidenced its intention that the normal method for computing a ten day time period under Federal Rule of Criminal Procedure 45(a) would *not* be followed in the context of temporary detentions. However, if Congress had intended that the normal method for computing a five day time period under Rule 45 should not apply under Section 3142(f), then Congress would have expressly stated in Section 3142(f) that weekends and holidays are to be included in that five day computation. The Government concludes that Congress' failure to do so evidences its intent that Rule 45 should apply to computation of the five day time period under Section 3142(f).

Both proposed constructions of the statute are sensible. The legislative history of Section 3142(f), however, clearly indicates that Congress did not intend to exclude weekends from the five day continuance period. The Senate Report provides that the continuance time limitations of Section

3142(f) are the same as those incorporated in the pretrial detention provisions of Section 23–1322(c)(3) of the District of Columbia Code. S.Rep. No. 225, 98th Cong., 1st Sess. 22, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3205. Section 23–1322(c)(3) of the District of Columbia Code provides that continuance of the detention hearing at the request of defendant "shall not exceed five *calendar* days, unless there are extenuating circumstances" (emphasis supplied). The plain meaning of the term "calendar days" is that weekends are to be included in the computation. The plain meaning is confirmed by the fact that Section 23–1322(e) of the District of Columbia Code, which had permitted the judicial officer to order temporary detention for "five calendar days", was amended in 1982 to permit temporary detention for "five days (excluding Saturdays, Sundays and legal holidays)". As the Senate Report indicates that Congress intended to adopt the same continuance time limitations as Section 23–1322(c)(3) of the District of Columbia Code, it follows that weekends are to be included in computation of the five day period of 18 U.S.C. § 3142(f).

The District of Columbia Code further mandates rejecting the Government's argument that the reason Congress expressly excluded weekends from the temporary detention period of 18 U.S.C. § 3142(d) was to modify the normal computation under Federal Rule of Criminal Procedure 45(a). Rather, Congress' express exclusion of weekends from Section 3142(d) manifests its adoption of the analogous provision of the District of Columbia Code § 23–1322(e), which as amended expressly excludes weekends from the temporary detention period.[1] Congress' failure to expressly exclude weekends from Section 3142(f) indicates that it similarly intended to adopt the District of Columbia's inclusion of week-

ends in the computation of the five day continuance period rather than evidencing an intent to abide by computation under Federal Rule of Criminal Procedure 45(a).

█ Under this court's construction of Section 3142(f), defendant's detention hearing *was held six days after defendant's initial appearance before the Magistrate.* However, this does not require defendant's release pending trial. Although the Bail Reform Act of 1984 generally is to be strictly construed, *United States v. Hurtado,* 779 F.2d 1467, 1474 (11th Cir.1985), under the unique circumstances of this case detention will be ordered. The one day delay was *de minimis* and there is no evidence that defendant was in any way harmed by the delay. The motion to continue the initial hearing was made by the defendant and not by the Government or *sua sponte* by the Magistrate. Although the defendant only requested a one day continuance, neither defendant nor his counsel, when notified of the March 4 hearing date, objected to the date or requested an earlier hearing. *See United States v. Fortna,* 769 F.2d 243, 249 (5th Cir.1985). Technical adherence to the five day continuance period in the instant case would prevent the detention of a defendant who falls squarely within the class of persons for whom detention was intended and is warranted under the Bail Reform Act. *United States v. Maull,* 773 F.2d 1479, 1483 n. 4 (8th Cir.1985). Furthermore, the Magistrate's computation of the five day continuance period utilizing Federal Rule of Criminal Procedure 45(a) was not unreasonable but instead is attributable "to the confusion generated by this new statute". *United States v. Alatishe,* 768 F.2d 364, 369 (D.C.Cir.1985). Although in future cases continuances of detention hearings upon motion of the defendant must be limited to

---

1. The legislative history indicates that Congress based Section 3142(d) on the District of Columbia Code provision for temporary detention with one exception. Congress deemed the five day temporary detention period to be too short for a statute which would apply nationally and therefore would require consultation and notification over longer distances than the District of Columbia pretrial detention statute. Therefore Congress authorized a ten day temporary detention period as opposed to the five days authorized by the District of Columbia Code § 23–1322(e). S.Rep. No. 225, 98th Cong. 1st Sess. 17, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3200.

five days, including weekends and legal holidays, except for good cause, failure to do so under the unique circumstances of this case was harmless and does not bar detention of the defendant. *See United States v. Williams,* 615 F.2d 585, 593 (3d Cir.1980) (unsettled state of the law bars retroactive application of construction of the Interstate Agreement on Detainers Act).

### C. *Evaluation of the Merits of Detention of Defendant Pending Trial*

Having determined that this court has jurisdiction to order detention, the next issue is to determine whether defendant should be detained on the merits. The parties agree that this court must conduct a *de novo* determination of whether the defendant should be detained pending trial. *United States v. Delker,* 757 F.2d 1390, 1394–95 (3d Cir.1985). This court may consider the detention decision and reasoning of the Magistrate. *Id.* at 1395.

The Bail Reform Act of 1984 requires this court to determine whether any conditions of pretrial release "will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The factors to be considered are set forth in 18 U.S.C. § 3142(g). The statute expressly provides a rebuttable presumption that no conditions of release could reasonably ensure defendant's appearance or the safety of other persons and the community where there is probable cause to believe that the defendant "committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*) ..." 18 U.S.C. § 3142(e).

■ Defendant does not dispute that the offenses with which he is charged fall within the statutory presumption of detention under 18 U.S.C. § 3142(e) and concedes that probable cause has been established.[2] The presumption of detention having been established, the burden is upon the defendant to produce some credible evidence contrary to the statutory presumption that no conditions of release could reasonably assure the appearance of the defendant and the safety of other persons and the community. *United States v. Alatishe,* 768 F.2d 364, 370–71 (D.C.Cir.1985). Once defendant produces sufficient evidence to rebut the presumption, the burden of showing justification for detention rests with the Government. *United States v. Hurtado,* 779 F.2d 1467, 1470 n. 4 (11th Cir.1985).

#### 1. *Availability of Conditions to Reasonably Assure the Appearance of the Defendant.*

■ Defendant's proffer with regard to whether the appearance of defendant can be reasonably assured is that defendant has strong family ties to the community. Specifically, defendant's home, family business, girlfriend (who has been indicted together with the defendant) and only living relative—his mother—reside in the area. Congress has recognized, however, that community ties do "not necessarily reflect a likelihood of appearance" and therefore did "not intend that a court conclude there is no risk of flight on the basis of community ties alone". S.Rep. No. 225, 98th Cong., 1st Sess. 24, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3207.

It is also noted that defendant previously appeared in county court when required. Upon questioning by the court, however, defense counsel could not present a concrete proposal for bail. It is acknowledged that the family business is up for sale and

---

**2.** The Third Circuit has not decided whether an indictment alone is sufficient to establish the probable cause needed to trigger the presumption that a person charged with a serious drug offense should be detained. *United States v. Accetturo,* 783 F.2d 382, 390 (3d Cir.1986). All the courts of appeals which have considered the issue agree that the indictment is sufficient to trigger the presumption. *United States v. Hurtado,* 779 F.2d 1467, 1478–79 (11th Cir.1985); *United States v. Contreras,* 776 F.2d 51, 54 (2d Cir.1985); *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir.1985); *Contra United States v. Allen,* 605 F.Supp. 864, 869–71 (W.D.Pa.1985). Because defendant conceded probable cause, this court need not rely on the indictment.

defendant's assets have been seized. The only form of bail could come from defendant's 79 year old mother, who apparently is not in the best of health. Because of illness, defendant's mother was not available for this court to determine whether any viable set of bail amounts could be made and whether or not Mrs. Heilig has any control over her son sufficient to ensure his appearance. This court does not believe that the foregoing proffer is sufficient credible evidence to rebut the statutory presumption.

Assuming for purposes of argument that the defendant's proffer is sufficient, the burden of proving that no set of bail conditions would reasonably assure the defendant's appearance rests with the Government. The Bail Reform Act of 1984 expressly provides that the Government must establish that no condition of release will reasonably assure the safety of other persons and the community by clear and convincing evidence. 18 U.S.C. § 3142(f). However, the statute is silent on the standard of proof by which the Government must establish that the appearance of the defendant cannot be reasonably assured by any conditions short of detention. While the courts appear divided over whether the Government must prove that detention is required to assure that defendant will not flee by clear or convincing evidence or by a preponderance of the evidence, *see United States v. Motamedi,* 767 F.2d 1403, 1406–07, 1410–11 (9th Cir.1985), this court need not resolve the issue. For under either standard, the Government has met its burden.

The Government offered direct evidence indicating that the defendant would consider fleeing. In a tape recording of a conversation between informant Zehring and the defendant, defendant states that "he would have to split" if his pending state criminal proceeding for possession of marijuana, hashish and cocaine and delivery of marijuana were decided adverse to him. In that same regard, the Government offered notes which were seized from defendant's residence. These notes, made during the pendency of his state criminal proceedings, refer to "extradition—Bahamas and Mexico".

Defendant argues that any references to flight or extradition made during the pendency of his state proceeding should not be considered because he never did flee. One can conclude that flight was not necessary because the state court proceeding was not resolved prior to his arrest on federal charges and the result was favorable to the defendant.

It is also clear from the testimony at the hearing that the defendant has connections in southern Florida as well as contacts with persons in the Bahamas whom he considers to be "like family". Congress expressly recognized that "flight to avoid prosecution is particularly high among persons charged with major drug offenses" and that "drug traffickers often have established substantial ties outside the United States ... [and] have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences." S.Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3203. *See United States v. Fortna,* 769 F.2d 243, 251–52 (5th Cir.1985); *United States v. Jessup,* 757 F.2d 378, 383–84 (1st Cir.1985) ("the magistrate or judge should then keep in mind the fact that Congress has found that [drug] offenders, as a general rule, pose *special* risks of flight").

The risk of flight is enhanced by the weight of the evidence against defendant. The testimony of Jeanne Berlin, a state narcotics agent, indicated that defendant's conduct was monitored over a period of time through the cooperation of an informant, Linda Mae Zehring. In addition, defendant's involvement in the events giving rise to the indictment were monitored by the use of surveillance, consensual interception of telephone and personal conversations with Zehring, wiretaps of defendant's personal phone, and pen registers. The substantial evidence against defendant on the federal charges and the potential for a

lengthy prison sentence supply a motive to flee the jurisdiction.

No conditions of bail can guard against the risk of flight. Defendant has no assets. The Government has confiscated most of his accounts and boat. The family business is being sold. Defendant must look to his 79 year old mother for monetary or secured bail. There is nothing on the record, however, regarding her assets, her ability to post bail, or her ability to control her son so as to reasonably assure his appearance.

The Government has met the burden of proving by a preponderance of the evidence, as well as by clear and convincing evidence, that defendant presents a flight risk and that no conditions of release can reasonably assure defendant's appearance.

2. *Availability of Conditions to Reasonably Assure the Safety of Other Persons.*

■ Defendant's proffer with regard to whether the safety of other persons can be reasonably assured if he is not detained is that he does not carry a weapon and is not a threat to any individual. Furthermore, defendant argues that any threat to the informant Zehring can be alleviated by removing the informant from her home in the Lebanon area, providing her with protection, or restricting the geographic movements of defendant.

This court does not believe that the defendant's proffer was sufficient to rebut the statutory presumption that detention should be ordered. Even assuming that the defendant's proffer was sufficient, the Government has met its burden of proving, by clear and convincing evidence, that no conditions of release can reasonably assure the safety of other persons.

The Government offered evidence that defendant possesses the intent as well as the capacity to harm potential witnesses. The identity of the Government's principal witness, informant Zehring, is known to the defendant. Zehring is unindicted and living in the Lebanon area. Defendant has made statements to Zehring that he would pay to have anyone who crossed him in his drug dealings "taken care of". The Government also submitted a tape recording in which defendant stated that he and two other persons went armed with machine guns to look for drug traffickers in the Bahamas who had ripped him off. There is also some evidence that defendant has used physical force on co-defendant Enck, who is currently out on bail. Finally, defendant has prior convictions for assault, harassment by communication and terroristic threats. *See* 18 U.S.C. § 3142(g)(3)(A).

There is no question in this court's opinion that defendant has the capacity to cause serious harm to anyone who has interfered with his drug operations. As in *United States v. Delker,* 757 F.2d 1390, 1401 (3d Cir.1985), this court does not believe that an order restricting the geographic movements of defendant to avoid contact with potential witnesses or requiring the Government to afford protection would reasonably protect the safety of those witnesses. Furthermore, "[d]efendant's community ties do not overshadow the factors that clearly and convincingly establish that he poses a danger to persons in the community". *Id.*

3. *Availability of Conditions to Reasonably Assure the Safety of the Community.*

■ On the issue of danger to the community, defendant proffers that there is no showing that he has any access to drugs. Defendant further submits that restricting his geographic movement would prevent his access to drug suppliers.

This court does not believe that the defendant's proffer was sufficient to rebut the statutory presumption that defendant should be detained. Even if defendant's proffer were deemed sufficient to rebut the presumption, the Government has proven by clear and convincing evidence that no conditions of release will reasonably assure the safety of the community.

The evidence at the hearing shows that at least as early as 1980–81, defendant was

involved in drug dealings. A review of the current indictment shows that defendant continued to traffic in drugs while on bail during the pendency of his state criminal proceedings, a factor which specifically mitigates in favor of detention under 18 U.S.C. § 3142(g)(3)(B). There is some indication that defendant may have a quantity of cocaine secreted in the Lebanon area that would be available to him. Continued drug trafficking is one of the precise dangers to the community for which Congress contemplated detention under 18 U.S.C. § 3142(e). *United States v. Strong,* 775 F.2d 504, 507 (3d Cir.1985); *United States v. Leon,* 766 F.2d 77, 81 (2d Cir.1985); S.Rep.No. 225, 98th Cong., 1st Sess. 12–13, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3195–96.

For these reasons, the defendant's motion will be denied.

### ORDER

This motion is before the court on defendant's motion for revocation or amendment of a detention order. In accordance with 18 U.S.C. § 3142(i), IT IS HEREBY ORDERED THAT:

1. Defendant's motion for revocation or amendment of a detention order is denied. The written findings of fact and statement of the reasons for detention are set forth in the Memorandum which accompanies this Order.

2. Defendant shall continue in the custody of the Attorney General. In accordance with defendant's request, defendant shall continue to be confined in the Cumberland County Prison in order to facilitate access to his counsel and to afford defendant an opportunity to be in population rather than in solitary confinement. Therefore, the circumstances of confinement usually contemplated by 18 U.S.C. § 3142(i)(2) will not be ordered.

3. Defendant shall be afforded reasonable opportunity for private consultation with his counsel.

4. On order of a court of the United States or on request of an attorney for the United States Government, the person in charge of the corrections facility in which defendant is confined shall deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.