**UNITED STATES of America, Plaintiff,**

**v.**

**Ramón Quezada MERCEDES, Danny Luciano, Defendants.**

**Nos. 01–138 (HL), CR. 01–530(HL).**

United States District Court, D. Puerto Rico.

Sept. 17, 2001.

Anita Hill-Adames, San Juan, PR, for Ramon Quezada Mercedes.

Hector E. Guzman-Silva, Federal Public Defender's Office, San Juan, PR, for Danny Luciano.

Carlos J. Martinez, U.S. Atty's Office, Criminal Div., San Juan, PR, for U.S.

Juan E. Alvarez-Cobian, San Juan, PR, Bruce J. McGiverin, Hato Rey, PR, for Marterial Witnesses.

## ORDER

GELPI, United States Magistrate Judge.

Defendants in criminal case No. 01–530(HL) are charged with transporting to the United States a group of illegal aliens, from the Dominican Republic to Puerto Rico, in violation of 8 U.S.C. § 1324(a)(1)(A)(i). One of the undocumented aliens traveling in the yawl allegedly captained by defendants drowned during the ordeal when the vessel capsized.

On August 2, 2001, and subsequently on August 21, 2001, the Court ordered that nineteen (19) aliens who were passengers on the yawl be detained as material witnesses pursuant to 18 U.S.C. § 3144. The Court, however, cognizant of the humane aspect of the aliens' detention as material witnesses, held an in-chambers status conference to determine whether it was imperative to detain all nineteen (19) aliens until trial, which is scheduled for October 24, 2001 at 9:00 a.m.

At the status conference, as well as via motions filed in Criminal Case No. 01–530(HL), counsel for defendants informed the Court that sixteen (16) of the material witnesses had been interviewed. The remaining aliens were not interviewed, as they were not brought to the visiting room during counsel's visit to the Metropolitan Detention Center.

Based on their interview of the material witnesses, counsel for defendants proffered to the Court that the alien witnesses would testify at trial that defendants did not captain the capsized yawl, nor were they aboard said vessel. Furthermore, the witnesses would testify that the yawl capsized as a consequence of being struck by a Puerto Rico Police boat that detained said vessel while on sea.

Counsel for the Government, in turn, proffered that it has six (6) witnesses who were passengers on said yawl, who would testify at trial that defendants indeed piloted the yawl in question. These alien government witnesses have been granted temporary visas to remain in the United States during the pendency of this case. However, all of these witnesses refuse to be interviewed by defense counsel.

Having considered the arguments raised by the defense, the Court finds that the detention of the nineteen material witnesses pending trial (set for October 24, 2001), and until the Court so orders otherwise, is warranted. The Court bases its decision on the following considerations. First, not being able to interview the Government's witnesses, defense counsel are at a tactical disadvantage in determining which of the material witnesses may rebut or discredit the prosecution's witness testimony at trial. This will not be known with certainty until the moment each of the Government's witnesses testifies. Second, the proffered testimony of the material witnesses is extremely relevant to the defense theory in this case, to wit, that defendants were not aboard the yawl nor piloted it. Third, the proffered testimony of the material witnesses is crucial for sentencing purposes inasmuch as the drowning of one of the passengers aboard

the yawl may result in a considerably enhanced term of imprisonment for the defendants. *See* U.S.S.G. § 2L1.1(b)(6)(4); *United States v. Hernández Coplin,* 24 F.3d 312, 316 (1st Cir.1994). If defendants are ultimately convicted, the material witnesses' testimony becomes extremely relevant under the sentencing guidelines.[1]

Finally, there exists controlling constitutional precedent for the detention of alien witnesses whose testimony would be both "material and favorable" to the defense. *See United States v. Valenzuela–Bernal,* 458 U.S. 858, 873, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). *See also United States v. Nai Fook Li,* 949 F.Supp. 42, 45–46 (D.Mass.1996); *United States v. Huang,* 827 F.Supp. 945, 950–952 (S.D.N.Y.1993).

Wherefore, based on the above, the Court hereby **ORDERS** that the following alien witnesses continue to be detained pursuant to 18 U.S.C. § 3144, pending trial, and until further order of the Court:

1. Santana, Raúl
2. Muñoz Lajara, David
3. Santos Nuñez, Ramón
4. Inoas Parra, Ignacio
5. Villa Nuñez, Moises
6. Pires, Fracois
7. Polanco Rosario, Manuel
8. Santos Nuñez, Miguel
9. Polanco Carcano, Manuel
10. Nivare, Isma
11. Cabrera Ubiera, Juan Ramón
12. De la Rosa, Franklin
13. Gil Flores, Silvio
14. Pembleton, Davis
15. Rodríguez Carela, Eusebio
16. Nuñez Tejada, Ramón
17. Vázquez Flores, José
18. Arias Reyes, José
19. Suero Adame, José

---

1. If defendants are ultimately convicted, pursuant to U.S.S.G. § 2L1.1(a)(2), a base offense level of twelve (12) will likely apply to them. A three (3) level enhancement is added based on the number of illegal aliens transported, pursuant to § 2L1.1(b)(2)(A). Furthermore, because a person died, a further eight (8) level increase applies, pursuant to § 2L1.1(b)(6)(4). Absent any other applicable guideline enhancements, or an upwards departure, *see, e .g., Hernández Coplin, supra* at 316 (substantial upward departure based on dangerous condition of vessel resulting in death of passengers upheld), the total offense level will be 23. This will yield a guideline range of 46–57 months, compared to one of 18–24 months had the death or other type of injury to a passenger not taken place. The sentencing range may also be higher, depending on the defendants' criminal history, if any.

The Court, without expressing any opinion, also notes that, similar to other federal statutes, the offense for which defendants stand charged contains a penalty provision enhancing the ten (10) year statutory maximum to up to life imprisonment or death where the offense results in the death of any person. *See* 8 U.S.C. § 1324(a)(1)(B)(iv). However, the defendants have not been specifically charged in the indictment with the conduct that triggers such enhancement. *Compare with Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (holding that analogous sentencing enhancements of carjacking statute must be charged in indictment and proven to the jury beyond a reasonable doubt) and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that any fact other than a prior conviction which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt). The Ninth Circuit seems to favor the *Jones-Apprendi* approach in Section 1324 prosecutions. *See United States v. Hernández–Guardado,* 228 F.3d 1017, 1026–1027 (9th Cir.2000) (comparing Section 1324 to 18 U.S.C. § 2119); *United States v. Valenzuela–González,* 246 F.3d 678 (9th Cir.2000) (table); *United States v. Luna–Moreno,* 2001 WL 615284 (9th Cir.2001). No other federal court opinion touches upon this subject.

The U.S. Attorney shall promptly inform the U.S. Immigration and Naturalization Service of this order.

SO ORDERED.